**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>United States of America</u>

   v.                                         Case No. 18-cr-078-JL-02

<u>Shelley Weeks</u>

**REPORT AND RECOMMENDATION**

In response to the United States Probation Office's February 18, 2021 filing of a bail violation report (Doc. No. 115) in this case, and the court's issuance of a summons, defendant Shelley Weeks appeared via videoconference at a bail revocation hearing on March 2, 2021 before the undersigned magistrate judge.[1]  For reasons stated below, the district judge should revoke Ms. Weeks's release and order her detained at this time, pending sentencing.

---

[1] An in-person hearing did not occur on March 2, 2021, due to the health and safety precautions taken in response to the COVID-19 pandemic.  <u>See</u> Standing Order ADM-1, 20-35 (Dec. 8, 2020); Standing Order ADM-1, 20-25 (July 24, 2020).  At the hearing, Ms. Weeks waived her right to an in-person hearing and consented to a hearing by videoconference.  The hearing was listed on the public docket on the court's website, and public access to the hearing was available by video in accordance with the court's Standing Order ADM-1, 20-7 (Mar. 23, 2020).  The court made findings regarding the limitations on in-person public access on the record.  <u>See</u> March 2, 2021 Public Access Findings (Doc. No. 117).  The court's Standing Orders relating to COVID-19 are available at http://www.nhd.uscourts.gov/court-response-coronavirus-disease-covid-19.

**Procedural Background**

On June 20, 2018, Ms. Weeks was arraigned in this court on a charge of conspiracy to distribute 40 grams or more of the controlled drug fentanyl, in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). At that time, the court released her on personal recognizance bail with conditions including pretrial services supervision. See Doc. No. 9.

Since that date, Ms. Weeks has appeared before the court for five hearings on bail violation reports, including the March 2, 2021 hearing. The first three hearings, occurring in November 2018, February 2019, and March 2019, while Ms. Weeks was on pretrial release, each arose from multiple positive drug tests for controlled substances (fentanyl or cocaine). Following each hearing, the court ordered her release, subject to conditions including participation in a medication-assisted substance abuse treatment program.

On March 26, 2019, Ms. Weeks pleaded guilty to the drug distribution conspiracy charge pursuant to a plea agreement between Ms. Weeks and the government. The court accepted her guilty plea and set the matter for sentencing on July 24, 2019. Although upon her plea she became subject to what is ordinarily mandatory detention pending sentencing under 18 U.S.C. § 3143(a)(2), the government recommended that there were

"exceptional reasons" why detention would be inappropriate under 18 U.S.C. § 3145(c). After considering the United States Attorney's Office's agreement to allow Ms. Weeks to apply for admission into the court's LASER Docket Program,[2] the impact of pre-sentencing detention on Ms. Weeks's daughter, and the parties' joint recommendation that she remain released pending a final decision on her LASER application, the court released Ms. Weeks subject to the previously-imposed bail conditions, pending sentencing.

On May 29, 2019, Ms. Weeks's supervising probation officer filed a bail violation report stating that the defendant had been arrested and charged with misdemeanor Theft by Unauthorized Taking, in violation of N.H. Rev. Stat. Ann. § ("RSA") 637:3 (based on a report that she shoplifted $114.92 worth of merchandise from Market Basket on May 9, 2019).[3]  See Doc. No. 49. The (fourth) bail violation hearing in this case, held on

---

[2]"The LASER Docket is a court rehabilitative program for those defendants/offenders whose qualifying crimes/criminal history are attributable to drug abuse and/or addiction." ADM-1, 16-2 (Nov. 7, 2016) ("LASER Docket: Law Abiding. Sober. Employed. Responsible. Four-Phase Program"). Admission into the program requires, among other things, the agreement of the United States Attorney's Office, the participant's execution of a LASER participation agreement, and final acceptance by the LASER Docket team. See id.

[3]See RSA 637:11, II (theft of property valued at less than $1,000 is a misdemeanor).

June 13, 2019, related to that report.  On that date, in anticipation of Ms. Weeks's final acceptance and entry into the LASER Docket Program, the court adopted the parties' joint recommendation that Ms. Weeks remain released, subject to previously imposed conditions and an additional requirement of home detention with location monitoring.  See June 13, 2019 Order (Doc. No. 53).

On June 26, 2019, the defendant began participating in LASER.  See Doc. No. 55.  Her participation lasted fourteen months, during which the court issued four Orders on Violation of Conditions of the LASER program, including an August 28, 2020 Order (Doc. No. 112) that terminated her from the program.  On October 9, 2019, the court ordered that Ms. Weeks be subject to both a curfew and electronic monitoring for two weeks.  Doc. No. 81.  And on April 23, 2020, the court ordered Ms. Weeks detained on a date to be determined due to violations of the terms of her "LASER Agreement/Order on Conditions of Release."  See Apr. 23, 2020 Order (Doc. No. 100).

On August 28, 2020, the court terminated Ms. Weeks's participation in the LASER Docket program without prejudice and ordered her detained until August 31, 2020.  See Aug. 28, 2020 Order (Doc. No. 112).  On September 3, 2020, the court issued an order releasing Ms. Weeks, subject to conditions pending

4

sentencing, including that she was eligible to reapply for acceptance into the LASER Docket program after January 1, 2021 if she had complied with all of the conditions of release during the 120-day period after the date of that Order.  See Doc. No. 111.

Ms. Weeks reapplied for admission to the LASER program in January 2021.  But before she resumed participation in LASER, Ms. Weeks's supervising probation officer reported that she had been charged with misdemeanor Theft by Deception, in violation of RSA 637:4, and summoned to the Concord District Court to answer that charge, during the time she was subject to conditions set by the court's September 3, 2020 Order.  Doc. No. 115.

The police report for the pertinent incident states that on January 31, 2021, a Walmart employee saw Ms. Weeks swapping UPC codes on items she selected, and then paying for nine items in the self check-out area at the lower price, at a cost difference of $153.66.  The police report indicates that Ms. Weeks essentially admitted to the offense when approached at the store by a member of the Concord Police Department ("CPD").  A CPD Officer issued a summons to Ms. Weeks directing her to appear in the Concord District Court on March 8, 2021.  The LASER team did not accept Ms. Weeks's application for re-admission, and, on

February 18, 2021, this court issued a summons requiring her appearance at the March 2, 2021 bail revocation hearing.

The parties in this case proceeded by offers of proof at the March 2, 2021 hearing.  The government argued in favor of bail revocation and detention.  Ms. Weeks, who was represented by counsel, objected, and argued in favor of release.

## Discussion

I. Mandatory Detention

The court's acceptance of Ms. Weeks's plea of guilty on March 26, 2019 subjected her to the mandatory detention provision of 18 U.S.C. § 3143(a)(2), which applies to defendants who have been convicted of certain drug crimes or violent crimes who have not yet been sentenced.  A person otherwise subject to mandatory detention may be released while awaiting the imposition or execution of a sentence "if it is clearly shown that there are exceptional reasons" why presentencing detention would be inappropriate, 18 U.S.C. § 3145(c), and if the judge finds by clear and convincing evidence that she is "not likely to flee or pose a danger to the safety of any other person or the community if released" subject to conditions, id. § 3143(a)(1).  See United States v. Farlow, 824 F. Supp. 2d 189, 193 (D. Me. 2011); United States v. Carretero, No. 98-CR-418TJM,

6

1999 U.S. Dist. LEXIS 17623, at *8, 1999 WL 1034508, at *3 (N.D.N.Y. Nov. 4, 1999) ("§ 3145(c) has been applied to post-plea and pre-sentence, non-appellate situations").  The burden of proof as to the existence of exceptional reasons, and as to flight risk and dangerousness rests with the defendant.  See Fed. R. Crim. P. 46(c); United States v. Weiner, 972 F.2d 337, 1992 U.S. App. LEXIS 28794, at *8, 1992 WL 180697, at *1 (1st Cir. July 31, 1992) (unpublished table decision).

The district court has discretion to determine what sort of reasons might be sufficiently "exceptional" so as to render detention inappropriate under section 3145(c).  United States v. McCabe, 940 F.2d 646, 1991 U.S. App. LEXIS 20448, at *6 (1st Cir. May 8, 1991).  Such factors may include the likelihood of a short sentence, whether the defendant's criminal conduct was aberrational, and whether the hardship of confinement would be "unusually harsh" for this individual. United States v. Garcia, 340 F.3d 1013, 1019 (9th Cir. 2003).  If the reasons previously warranting post-plea, presentencing release no longer exist or are no longer exceptional, the court may revisit its release determination under § 3145(c).  See Carretero, 1999 U.S. Dist. LEXIS 17623, at *17-*18, 1999 WL 1034508, at *6.

At the March 2, 2021 hearing, the government argued that participation in the LASER Docket program generally provides an

7

exceptional reason why detention is inappropriate, warranting release for those defendants who have been accepted into the program. Ms. Weeks previously fit into that category prior to her termination from LASER, and the interruption of her return to the program. At this point, the LASER program no longer provides her with an exceptional reason for the court to find that detaining her is inappropriate.

The defendant argues that other exceptional reasons warranting release include: that Ms. Weeks has demonstrated generally improved compliance with her release conditions; that her prior difficulty complying with conditions of confinement stemmed from mental health issues she is now beginning to address; that the January 31, 2021 shoplifting incident was consistent with a compulsive disorder, not criminality; that she has a history of trauma; and that her detention pending sentencing will have a grave impact on her twelve-year-old daughter, whose father is also incarcerated.

A defendant's compliance with conditions of release is required and expected, not exceptional. United States v. Bernard, No. 1:12-CR-00022-JAW-02, 2013 U.S. Dist. LEXIS 14984, at *5-*6, 2013 WL 145582, at *2 (D. Me. Jan. 14, 2013). In that regard, Ms. Weeks's engagement in counseling and treatment, which she credits as a cause of her improved compliance, has

8

been a condition of her release, and while commendable, is also not an exceptional reason why detention would be inappropriate.

The defendant's reliance on her history of trauma and shoplifting as a manifestation of a compulsive disorder (kleptomania) also fails to warrant a finding of exceptional reasons. Defendant has not shown that her history of trauma makes confinement inappropriate at this time.

As to kleptomania, Ms. Weeks has offered her treating psychologist's letter listing her diagnoses and indicating that kleptomania could not presently be ruled out. Ms. Weeks reports she has been working on self-control strategies and ways to avoid shopping without a chaperone who could deter her actions. She has also been referred for further testing and evaluation. But she does not presently have a diagnosed condition that accounts for shoplifting. And even if the court were to find she has such a condition, the court would not find upon the record before it that a compulsion to engage in property crimes that she is struggling to control is grounds for deeming detention inappropriate pending sentencing.

An exceptional family situation warranting release under § 3145(c) "may arise 'when the defendant is raising small children by himself or herself, and the children have special needs for which only the defendant can provide.'" United States

v. Loera, No. CR 13-1876 JB, 2017 U.S. Dist. LEXIS 96221, at *79, 2017 WL 3098257, at *26 (D.N.M. June 22, 2017) (citation omitted).  The information before this court is that Ms. Weeks's daughter has a learning disability, the girl's father is incarcerated, and there is no other parent or grandparent who can step in while Ms. Weeks is incarcerated.  Without minimizing the hardship Ms. Weeks's detention could impose on her daughter, the court does not deem those circumstances to be exceptional relative to the situation many families face when their loved ones are incarcerated.  See United States v. Loaiza, No. 18-cr-134-01-PB, 2018 U.S. Dist. LEXIS 207093, at *4, 2018 WL 6421657, at *2 (D.N.H. Nov. 20, 2018) ("[p]ersonal reasons, such as caring for family members, being gainfully employed, and caring for young children" with unusual health problems do not generally rise to level of exceptional for purposes of determining whether to release a defendant pursuant to § 3145(c)), R&R approved, 2018 U.S. Dist. LEXIS 206058, 2018 WL 6418894 (D.N.H. Dec. 6, 2018).  As the court is aware of no exceptional reasons sufficient to warrant Ms. Weeks's release under § 3145(c) at this time, detention is mandatory.  Accordingly, the district judge should revoke her bail and order her detained pending sentencing.

II.  Section 3148(b)

The defendant argues that the court should apply 18 U.S.C. § 3148(b) in determining whether Ms. Weeks should remain released on bail at this time.  If the court were to find mandatory detention under § 3145(c) is not required, application of § 3148(b) independently provides a basis for the court to revoke Ms. Weeks's release.

A.  Standard

Under § 3148(b), a judge who has issued a release order may thereafter issue an order of revocation of release and detention of the defendant if, after a hearing, the judge finds that there is "probable cause to believe that the person has committed a Federal, State, or local crime while on release." 18 U.S.C. § 3148(b)(1)(A).  "Probable cause" under section 3148(b)(1)(A) means "that the facts available to the judicial officer 'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail." United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986) (citation omitted).  The burden of showing probable cause under section 3148(b)(1)(A) rests with the government.  United States v. Barnett, No. 05-CR-095-01-SM, 2012 WL 6552797, at *1, 2012 U.S. Dist. LEXIS 177406, at *1 (D.N.H. Dec. 14, 2012).

11

In addition to probable cause, the court must find either that: (1) based on the factors set forth in 18 U.S.C. § 3142(g), "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community"; or (2) that "the person is unlikely to abide" by any condition of release. 18 U.S.C. § 3148(b)(2)(A)-(B); see generally United States v. Manafort, 897 F.3d 340, 345 (D.C. Cir. 2018) (a finding that the defendant is unlikely to abide by conditions of release is sufficient to provide grounds for revoking bail). The findings regarding risk of flight, dangerousness, and a defendant's unlikelihood of compliance with conditions of release may be established by a preponderance of the evidence at the revocation hearing. See Gotti, 794 F.2d at 778. This court places that burden on the government.[4]

---

[4] In general, in the pre-sentencing context, the burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant. See Fed. R. Crim. P. 46(c). It would appear logical that the defendant should continue to bear that burden of persuasion in the context of a hearing to revoke bail in the pre-sentencing context. See United States v. Carretero, No. CR. 98-CR-418TJM, 1999 U.S. Dist. LEXIS 17623, at *27, 1999 WL 1034508, at *9 (N.D.N.Y. Nov. 4, 1999). But there is authority to the contrary. See, e.g., March 1, 2021 R&R, United States v. Patch, No. 18-cr-187-SM-3 (D.N.H. March 1, 2021) (ECF No. 84), slip op. at 3-4 (government generally has burden to prove by preponderance of evidence the requirements of section

B.   Probable Cause

On January 31, 2021, while subject to conditions of release, a CPD officer issued Ms. Weeks a summons to appear in Concord District Court on a misdemeanor theft charge. The bail violation report refers to a CPD officer's conclusion, in a January 31, 2021 police report, that Ms. Weeks swapped the UPC codes on nine items at Walmart with the UPC codes on items of lesser value, resulting in a price difference of $153.66, and then purchased those items at the lower cost. See Doc. No. 115. The supervising probation officer stated during the March 2, 2021 hearing that, according to the CPD report, Ms. Weeks made inculpatory statements when questioned by a CPD officer at the scene. The information before this court warrants a finding that there is probable cause to believe that Ms. Weeks committed a misdemeanor theft offense while on bail. That finding is sufficient to satisfy the "probable cause" prerequisite to the issuance of a revocation order under § 3148(b)(1)(A).

---

3148(b)(2)(A) or (B); United States v. Poinsett, 953 F. Supp. 37, 38 (N.D.N.Y. 1997); cf. United States v. Jessup, 757 F.2d 378, 382 (1st Cir. 1985) (legislative history of section 3148(b)'s rebuttable presumption of dangerousness indicates that the Bail Reform Act "does not impose a burden of persuasion even upon a defendant found likely to have just committed a crime while on bail").

C.   Likelihood of Compliance

Ms. Weeks has been subject to conditions of release since June 2018. In that time period, she has come before this court five times for bail revocation hearings: three times for multiple positive drug tests for fentanyl and cocaine, and twice for misdemeanor shoplifting charges. Her compliance with LASER Docket conditions was spotty, resulting in four orders of violation and culminating in her termination from that program. Ms. Weeks received clear notice in each prior bail revocation hearing and throughout the LASER program that compliance with conditions is required to remain on release, and that a principal requirement is that she avoid committing any federal, state, or local offense. In particular, by way of the May 29, 2019 bail violation report and the ensuing June 13, 2019 hearing, she received notice that shoplifting could result in bail revocation and detention. Ms. Weeks's most recent release order provided her with the opportunity to re-enter the LASER program if she demonstrated compliance with all of the court's conditions of release for 120 days. Less than one month after the end of that 120-day period, Ms. Weeks was charged with misdemeanor theft and summoned to appear in state court to answer that charge.

Ms. Weeks's recurring noncompliance with her conditions of release, after she has been given multiple chances to demonstrate her intent to comply, and after the court imposed more restrictive conditions, including a limited period of detention, is a serious concern for this court.  While none of Ms. Weeks's instances of noncompliance have involved violence, none have resulted in substantial financial loss to any individual, and, since her March 26, 2019 guilty plea, none have involved illicit drug use, she has twice failed to abide by the condition prohibiting her from engaging in criminal conduct while on release awaiting sentencing.  These violations demonstrate that she is not likely to comply with any condition or combination of conditions going forward.[5]  See United States v. Martin, 447 F. Supp. 3d 399, 403 (D. Md. 2020) (finding that "[t]he best predictor of how [the defendant] will behave if he were to be released is how he has behaved when released in the past"); Poinsett, 953 F. Supp. at 39 (defendant's repeated failure to comply with conditions, "whether by choice or as a

---

[5] Ms. Weeks has proposed location monitoring, home confinement, and a requirement that she not enter any retail establishment except to shop for food with a chaperone as conditions of confinement.  But she has not identified a chaperone, and a restriction allowing Ms. Weeks to shop for food would provide no assurance regarding her compliance with conditions, given her shoplifting history.

15

result of his addiction," warranted finding that government satisfied its burden under § 3148(b)(2)(B)).

The court's findings of probable cause that Ms. Weeks committed a crime while on release, and the unlikelihood that she will abide by conditions of release, are grounds to revoke her bail at this time. See Manafort, 897 F.3d at 345. Accordingly, the district judge should revoke Ms. Weeks's release and order her detained pending sentencing.

## Conclusion

For the foregoing reasons, the district judge should:

1.   Revoke Ms. Weeks's release order;

2.   Direct that she be detained pending sentencing; and

3.   Commit her to the custody of the Attorney General or his designated representative for confinement in a correctional facility, where:

> a.   Ms. Weeks shall be afforded a reasonable opportunity for private consultation with defense counsel; and

> b.   On order of a court of the United States or on request of an attorney for the government, the person in charge of the correctional facility shall deliver Ms. Weeks to the United States Marshal for the purpose of effecting Ms. Weeks's appearance at court proceedings.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed.

R. Crim. P. 59(b)(2). The fourteen-day period may be extended upon motion. Id. Failure to file objections within the specified time waives the right to appeal the district court's order. Id.

                                           *Andrea K. Johnstone*
                                           Andrea K. Johnstone
                                           United States Magistrate Judge

March 5, 2021

cc:  Michael J. Iacopino, Esq.
     Jaye Rancourt, Esq.
     Jennifer C. Davis, Esq.
     Seth R. Aframe, Esq.
     U.S. Probation
     U.S. Marshal